## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

COMMUNICATIONS TECHNOLOGIES, INC.

*Plaintiffs*.

v.

CITRIX SYSTEMS, INC.

*Defendant*.

Civil Action No. __20-cv-11648__

<u>**JURY TRIAL REQUESTED**</u>

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Communication Technologies, Inc. ("COMTek" or "Plaintiff") hereby sets forth its Complaint for Patent Infringement against Defendant Citrix Systems, Inc. ("Citrix or Defendant"), and states as follows:

### NATURE OF THE CASE

1.      This action is for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq.  COMTek seeks monetary damages and injunctive relief in this action.

### THE PARTIES

2.      Plaintiff Communications Technologies, Inc. is a corporation organized and existing under the laws of the State of Virginia, having its principal office at 11710 Plaza America Drive, Suite 2000, Reston, Virginia 20190.

3.      COMTek is a leading technology firm which offers an array of telecommunications and IT managed services as well as training support to government and

commercial enterprises.  In 2001, the Department of Defense recommended COMTek's patented

solution in the form of COMTek's No*Trace software tool.  Notably, COMTek's software was

listed first among the five products that the DoD considered to meet its minimum policy standards.

4.     Upon information and belief, Defendant Citrix Systems, Inc. is Delaware

corporation with its principal place of business at 851 West Cypress Creek Road, Fort Lauderdale,

Florida 33309.  Citrix has been registered as a foreign corporation with the Commonwealth of

Massachusetts since March 19, 1999 (Identification No. 752275152).  Upon information and

belief, Citrix maintains an office in Burlington, Massachusetts which also houses its legal

department.  According to Corporations Division records in Massachusetts, Citrix may be served

via its registered agent, Corporation Service Company, 84 State Street, Boston, Massachusetts

02109.

## JURISDICTION AND VENUE

5.     This Court has exclusive subject matter jurisdiction over this case pursuant to 28

U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the

United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and

285.

6.     This Court has personal jurisdiction over Defendant on the grounds that Citrix has

minimum contacts with the Commonwealth of Massachusetts and has purposefully availed itself

of the privileges of conducting business in the Commonwealth of Massachusetts including

through, at least, registering to do business in and conducting business in the Commonwealth of

Massachusetts, including setting up offices in the state as well as the sale and offer for sale of

products accused of infringement in this action throughout the Commonwealth of Massachusetts.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) because Citrix has engaged in acts of infringement in this district and has a regular and established place of business in this district.

**FACTUAL BACKGROUND: COMTEK AND THE PATENTED TECHNOLOGY**

*COMTek's Origins*

8.     Plaintiff COMTek was established in October 1990 by Dr. Joseph Fergus, a former AT&T Bell Laboratories ("Bell Labs") engineer and Vietnam-era veteran of the U.S. Navy.[1]  Dr. Fergus started the company after spending approximately 10 years at Bell Labs, widely regarded as the most prestigious Research and Development (R&D) organization in information and communication technology (ICT) at the time.  During his tenure at Bell Labs, Dr. Fergus worked on a number of technological innovations to include, Signaling Systems No. 7 (SS7) for telecommunications network, the Integrated Services Digital Networks (ISDN), the Signaling Network Interconnection (SNI) gateway function and Open Systems Interconnection (OSI) standards. In addition, Dr. Fergus was a United States Representative to the Consultative Committee for Telephony and Telegraphy (CCITT) (now called the International Telecommunications Union – Telecommunication Standardization Sector (ITU-T)) in Geneva, Switzerland, where he advanced the US positions on international telecommunication standards development.   Among his accomplishments are:   1) the development of the Seize Circuit Procedure, which was responsible for call set-up between in-band and out-of-band signaling networks; 2) the creation of the Charge Number Parameter, which enables the transport of caller

---

[1] Dr. Fergus is from the Island of St. Croix in the U.S. Virgin Islands.  He received his Doctorate of Humane Letters from Norfolk State University in 2004.  He holds a Masters Degree from the University of Illinois and a Bachelors Degree in Electrical Engineering from Norfolk State University.  He has been the recipient of several awards including the "Minority Business Leader" Award (Washington Business Journal), "Excellence in Leadership" Award (Northern Virginia Urban League), "Best of Black Business" Award (American Academy of Business and Commerce), and the Top Black Business Award (DiversityBusiness.com).

identification (Caller ID) information across multiple signaling networks; and 3) significant contribution towards the development of the Signaling Connection Control Part (SCCP) – a network/session layer function of the signaling network protocol stack that allows for virtual call establishment. It was this deep understanding of and multifaceted expertise in telecommunications, along with the desire to establish his own enterprise that drove Dr. Fergus toward the creation of COMTek.

9.      During the 1990s, COMTek provided systems engineering and technical assistance to the federal government of the United States as well as the private sector.  Because of Dr. Fergus's background and expertise, COMTek was contracted to provide technology research to the Department of Defense ("DoD") including producing technical reports on such topics as 1) the transition from Internet Protocol Version 4 (IPv4) to Internet Protocol Version 6 (IPv6); 2) the effects of electromagnetic pulse on electronic systems; and 3) the standardization of Multi-Level Precedence and Pre-emption (MLPP) application, to name a few.  COMTek also provided other ICT standards development support as well as other technical expertise to include computer facilities management (*i.e.* 24/7 enterprise operations and technical support, including systems programming, application programming and systems maintenance), systems break/fix support and data custodian support.  Data custodian was the term used by the DoD to describe the support for end-of-life computer systems.

10.      During this same period, the DoD was concerned that data resident on end-of-life systems could fall into the wrong hands.  Therefore, COMTek was tasked by the United States Air Force (USAF) with collecting end-of-life systems, removing the hard drives, degaussing the hard drives, then have them shredded by an industrial shredder.  After shredding several thousand systems and realizing the onerous time required to physically shred hardware, COMTek created a

software solution that eliminated the need to remove the hard drives, thereby, automating the data removal process.  As new Pentium computers were rapidly introduced into the marketplace so too were older systems being placed into the end-of-life category.  The conventional thinking at the time was that any, or all, of the end-of-life devices could have sensitive information in store and, therefore, such data must be protected.

*No\*Trace and the Patented Technology*

11.     COMTek also learned through its marketing efforts to the U.S. Army Communication and Electronics Command (CECOM) at Fort Monmouth, New Jersey that the DoD was considering issuing laptop computers to U.S. troops.  However, the DoD was concerned that such devices could fall into the wrong hands and a solution was needed.  When Dr. Fergus learned of the dilemma, he invented a solution, claimed in what would become U.S. Patent No. 6,725,444 ("the '444 patent"), and commercialized it in COMTek's "No\*Trace" application.  The No\*Trace application provided the DoD with a way to protect sensitive data resident on mobile devices, even when such devices were not in the possession of their rightful owners.

12.     Dr. Fergus's system and method for handling and protecting sensitive data on mobile computing devices was groundbreaking. When the DoD learned that, using Dr. Fergus's system and method, data could be permanently removed from (and thereby protected on) mobile computing devices without removing the storage medium (*e.g.*, hard drive) and, that overwriting could be done without limits to the number of times the data can be overwritten, the DoD released guidelines on the handling of sensitive data on mobile devices, titled "Disposition of Unclassified DoD Computer Hard Drives."

13.     In its memorandum, DoD recommended COMTek's (then patent-pending) solution in the form of COMTek's No\*Trace software tool.  Notably, COMTek's software was listed first

among the five products that the DoD considered to meet its minimum policy standards. Excerpts

of the memorandum, dated June 4, 2001, are reproduced below:



ASSISTANT SECRETARY OF DEFENSE
6000 DEFENSE PENTAGON
WASHINGTON, DC 20301-6000

June 4, 2001

MEMORANDUM FOR SECRETARIES OF THE MILITARY DEPARTMENTS
CHAIRMAN OF THE JOINT CHIEFS OF STAFF
UNDER SECRETARIES OF DEFENSE
DIRECTOR, DEFENSE RESEARCH AND ENGINEERING
ASSISTANT SECRETARIES OF DEFENSE
GENERAL COUNSEL OF THE DEPARTMENT OF DEFENSE
INSPECTOR GENERAL OF THE DEPARTMENT OF DEFENSE
DIRECTOR, OPERATIONAL TEST AND EVALUATION
ASSISTANTS TO THE SECRETARY OF DEFENSE
DIRECTOR, ADMINISTRATION AND MANAGEMENT
DIRECTORS OF THE DEFENSE AGENCIES
DIRECTORS OF THE DOD FIELD ACTIVITIES

SUBJECT: Disposition of Unclassified DoD Computer Hard Drives

References: (a) Deputy Secretary of Defense Memorandum, "Destruction of DoD
Computer Hard Drives Prior to Disposal," dated January 8, 2001
(b) Deputy Secretary of Defense Memorandum, "Disposition of
Unclassified DoD Computer Hard Drives," dated May 29, 2001

Reference (a) directed that immediate steps be taken to ensure that all hard drives of unclassified computer equipment being disposed of outside the Department of Defense (DoD) be removed and destroyed. Reference (b) directed that the January 8, 2001 guidance be amended to provide Department-wide procedures, methods and specifications regarding the disposition of unclassified hard drives, to include allowing hard drives to be overwritten before leaving DoD custody or control. However, while meaningful information cannot be recovered from a hard drive that has been properly overwritten with qualified software, there may be situations where the nature of the unclassified information (e.g., law enforcement) is such that the preferred course of action is to degauss or destroy the hard drive in question.

Attachment 1 specifies methods and procedures for sanitization and provides guidance on disposition of hard drives, depending on ownership. Attachment 2 provides specifications for overwriting, degaussing or destruction. Attachments 3 and 4 provide definitions and examples of verification labels and destruction records, respectively.

Disposition of Unclassified DoD Computer Hard Drives

Specifications For Sanitization Of Hard Drives

2.2.  Software Available for Overwriting:  Listed below are products and
manufacturers that produce overwriting software tools.  These products are currently in
use by DoD Components and are considered to meet the minimum standards called out in
this policy.  Note:  This listing is not all-inclusive and there may be other products that
meet the required specifications in addition to the products listed below.

    2.2.1.  Product Name:  "No Trace"
       Communication Technologies, Inc.,
       14151 Newbrook Drive, Suite 400, Herndon, VA  20170
       Tel: (703) 961-9080
       Fax: (703) 961-1330
       Web:  www.comtechnologies.com

*Awards and Recognition*

14.     In 2004, Fergus's leadership was recognized nationally when COMTek earned a spot on the prestigious "Inc. 500" list of the fastest-growing private companies in America. COMTek was also listed as one of the top 100 Black-owned businesses in the United States, ranking in the top one percent of all minority-owned business in the country.

15.     In 2009, the Washington Business Journal published an article entitled "Joseph Fergus: Digital eraser" which described a consumer-focused version of the patented technology. *See* https://www.bizjournals.com/washington/stories/2009/11/09/story8.html?s=print.

### THE PATENT-IN-SUIT

16.     This case involves U.S. Patent No. 6,725,444 ("the '444 Patent" or "the Asserted Patent").  A copy of the '444 Patent is attached as Exhibit 1.

17.     As explained in the '444 Patent, computing systems may "contain sensitive information related to a corporation or entity's business, personnel, finances, or technology." (Ex. C at 1:14-17).  "A problem arises when a hostile entity gains access to the computer system and, therefore, possibly access to sensitive information." (*id.* at 1:21-23).  The patent goes on to describe the "need for systems and methods for removal of sensitive information from computing systems that allows programmability, immediate initiative of removal, automatic initiation of removal of

information, as well as bypass protection against hostile entities attempting to circumvent the sensitive information removal process."

18.     The '444 Patent is directed to a system and method for programmable removal of information from a computing system that includes: selecting one or more information removal options, where the selecting is performed on a computing device; generating a purge script file based on the selected information removal options; and initiating a purge of information from one or more computing systems, where the purge is performed by execution of the purge script file. *See e.g. id*. 1:56-63; 2:32:44.

19.     Fig. 6 of the '444 Patent shows an example display screen that allows a user to enter options desired during a purge of information.  One option is activation of a box "which enables an automatic purge of information to occur upon a particular number of unsuccessful logins."  *Id*. 7:49-52.

## FIG. 6



8

20.     The '444 Patent describes that "in systems and methods according to the present invention, the system may be set up to detect a programmable number of unsuccessful logon attempts to a computing system which will thereby initiate automatically the purge of sensitive information from the computing system." *Id*. at 4:10-15.

21.     The '444 Patent was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO") on April 20, 2004.

22.     The '444 Patent is assigned to COMTek, which owns all right, title, and interest in the'444 Patent, including the right to sue for infringement and recover damages resulting therefrom.

## THE ACCUSED PRODUCTS

23.     Defendant offers for sale, sells, and uses within the United States certain software that infringes the '444 Patent, including, but not limited to Citrix Workspace—which includes Citrix Virtual Apps and Desktops, Citrix Endpoint Management (CEM), as well as its XenMobile product.  On information and belief, the Citrix Workspace platform and its components secure a range of devices, from local data on desktop and laptop computers to mobile devices (and apps on those mobile devices) in providing functionality to erase (or "wipe") all data after a set number of unsuccessful attempts entering a passcode.   On information and belief, Citrix's ability to provide data protection, one of the key features of its product line, to devices hinges on the systems and methods covered by the '444 Patent.

24.     Citrix Virtual Apps and Desktops offers the "capability to wipe the device clean and ensure company data doesn't fall into the wrong hands if the device is lost or stolen."  *See e.g.* https://www.citrix.com/blogs/2020/05/13/determining-the-best-remote-access-strategy-for-your-organization/.  On information and belief, these device wipes may be triggered by entering the

wrong passcode, *i.e.*, tied to a selected number of unsuccessful attempts, according to the systems and methods in at least claims 1, 11, and 16.

25.     CEM includes security policies that implement device wipes.   *See e.g.* https://docs.citrix.com/en-us/citrix-endpoint-management/advanced-concepts/deployment/device-app-policies.html;     https://docs.citrix.com/en-us/citrix-endpoint-management/device-management.html.   CEM documentation describes that CEM is capable of (1) "App wipe" which deletes a user account, (2) "Full wipe" which erases all data and apps from a device, including any memory cards, and (3) "Selective wipe" which erases "all corporate data and apps from a device." *Id*. On information and belief, wipes may be triggered by entering the wrong passcode, *i.e.*, tied to a selected number of unsuccessful attempts, according to the systems and methods in at least claims 1, 11, and 16.

26.     Additionally, Citrix's XenMobile product includes a "passcode policy."   Citrix describes its XenMobile passcode policy at length in its documentation on XenMobile, available at https://docs.citrix.com/en-us/xenmobile/server/policies/passcode-policy.html (dated March 26, 2020),     and     on     its     Support     page     (CTX207523),     available     at https://support.citrix.com/article/CTX207523 (modified June 29, 2017).

27.     According to Citrix, the "maximum failed sign on attempts in passcode policy is configured to mark the maximum number of attempts for user to enter the passcode (entering wrong passcode)."   *See* Citrix, Understanding XenMobile "Maximum failed sign-on attempts" Passcode Policy, https://support.citrix.com/article/CTX207523.   "If the value configured in your passcode policy is met it will factory reset the device for both ios as well as android - this is by design." *Id*.   "If you want to lock the device or do a selective wipe that can be done using either an automated action or manually from the devices tab on XenMobile console (Secure->lock) or

(Secure-> Wipe)" *Id*.  The informational removal option tied to a number of unsuccessful attempts

can therefore be selected according to the systems and methods in at least claims 1, 11, and 16.

On information and belief, the selective wipe is accomplished by generating a purge script file, or

the equivalent thereto, based on the selected information removal option.

28.     Citrix also describes "additional resources" whereby "[i]n XenMobile Passcode

policy when you configure 'Maximum failed sign-on attempts' to a specified number, you will see

that the 'Erase Data' (on iOS) and 'Auto Factory reset' (on Android) options get disabled/greyed

out." *Id*.  Citrix presents the following demonstrative screen captures to illustrate the additional

resources described:



29.     Citrix further describes that "[i]f the user reaches that defined number of failed

attempts then the device is factory reset." *Id*.  "There is no way you can avoid the factory reset."

The Citrix software places the target computing device under the direct control of Citrix, and

prevents such control by the user.  On information and belief, the factory reset initiates a purge of

information automatically by execution of a purge script file automatically, *i.e.*, erasing of all data

after a set number of unsuccessful attempts.   Further, on information and belief, the purge comprises deleting file and directory information in a File Allocation Table or equivalent (e.g. FAT32/ex7/ex8 for Android and APFS for iOS) related to the information and overwriting the information in physical memory at least once, wherein sensitive information may be removed from at least one computing device automatically.

### CLAIM 1
### (Infringement of the '444 Patent by Citrix)

30.     Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

31.     Defendant directly infringes at least claims 1-2, 5-8, 11, and 16-17 of the '444 Patent in violation of 35 U.S.C. § 271 with respect to Defendant's software applications including, but not limited to, XenMobile.   COMTek contends each limitation is met literally, and, to the extent a limitation is not met literally, it is met under the doctrine of equivalents.

32.     For example, Defendant directly infringes the '444 Patent by making, using, selling, and/or offering to sell within the United States software applications including, but not limited to, XenMobile.

33.     Defendant has induced infringement, and continues to induce infringement, of one or more claims of the '444 Patent under 35 U.S.C. § 271(b).

34.     COMTek has been injured and seeks damages to adequately compensate it for Defendant's infringement of the '444 Patent. Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

35.     Upon information and belief, Defendant will continue to infringe the '444 Patent unless permanently enjoined by this Court. Pursuant to 35 U.S.C. § 283, COMTek is entitled to a permanent injunction against further infringement of the '444 Patent by Defendant.

## DAMAGES

36.     For the above-described infringement, COMTek has suffered injury and seeks a permanent injunction and damages, in an amount to be proven at trial, to adequately compensate it for Defendant's infringement of the Asserted Patent. Such damages should be no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

## JURY DEMAND

37.     COMTek requests a jury trial of all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.      A judgment in favor of COMTek that Defendant has infringed the '444 Patent, whether literally or under the doctrine of equivalents, as described herein;

B.      A judgment and order requiring Defendant to pay COMTek's damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the '444 Patent and provided under 35 U.S.C § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as need.

C.      An order under 35 U.S.C. § 283 permanently enjoining Defendant from continuing to make, use, sell, and/or offer to sell the products accused of infringing the '444 Patent and from further inducing or contributing to the infringement of the '444 Patent.

Dated September 3, 2020

_____
Conor B. McDonough (BBO No. 704140)
David L. Hecht (*pro hac vice* forthcoming)
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
T: (212) 851-6821
E: cmcdonough@hechtpartners.com
E: dhecht@hechtpartners.com

*Counsel for Plaintiff Communication Technologies, Inc.*

13